The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and the Honorable Court. Thank you. Please be seated. Welcome. We are very happy to have you here today. And we will hear argument first in United States v. Shields. And Mr. Page, whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Wesley Page, Federal Public Defender for the Southern District of West Virginia. On this case involves a district court's failure to address one of Shields' non-frivolous arguments for a downward variant sentence. That failure makes the sentence procedurally unreasonable, such that the judgment should be vacated and the case remanded for resentencing. Shields was charged and Mr. Page, can I just ask you what I think is the hardest question to me conceptually in this case by far? Let's posit that you're right, that at the time the district court absolutely should have addressed this argument. But if we vacate and remand, there's going to be a new sentencing proceeding at which the new amended guidelines can apply, right? That's not right, Your Honor. Why? Well, the guidelines in effect, it would be an ex post facto issue. How would it be an ex post facto issue to sentence your client under guidelines that would treat other people worse but not treat your client worse? The guideline that applies to your client would be exactly the same. Well, now that I've reconsidered that, I think you are correct, Your Honor. So even if the guidelines are the same, we still have... His guideline is the same, but other people's guidelines are different in a way that eliminates this disparity you're talking about. But at the time he was sentenced and for several years under Campbell and like cases from other circuits, people in his same situation convicted of felon possession of a firearm with a single prior drug trafficking conviction, some of those folks were sentenced under a lower guideline range because Campbell said that West Virginia controlled substance offenses did not count as controlled substance offenses under the guidelines. So you have a different... I guess my point is the precise argument he made wouldn't exist anymore because today offenders sentenced under those two states would get exactly the same guideline. But I guess he'd have the argument that there were a number of people, people who committed offenses at the same time I committed my offense and those people... I guess at minimum you have to agree it would be a different argument. The argument he'd have to make at any resentencing proceeding would have to be different than the one he made at his initial sentencing proceeding. I think it would be more nuanced. I would agree with that. I think the argument would be for a period of time and that period of time would include the time in which Mr. Shields committed his offense and was sentenced originally, there were a number of folks who were sentenced under a disparate guideline. And that's the crux of the argument is that unlike... How do you respond to the government's argument that that's just sort of like intrinsic in the sentencing guidelines and the categorical approach and federalism? Like that's just a feature of having a guideline system and federalism and a categorical approach. The categorical approach in the way the government made the argument was with regard to crimes of violence. And I think when we're parsing out statutes to determine whether they are crimes of violence using the categorical approach, you're at least trying to determine whether there is an element of force that is involved. There are certain enumerated offenses that would still qualify as crimes of violence. So I think under that... I just mean as long as we have a categorical approach, there will always be situations where you could say if I did the exact same thing in a different state, the exact same factual thing in a different state, my guidelines range would be different. That is intrinsic in having the categorical approach. I have to concede that, Your Honor. But that does not negate the fact that this was a non-privileged argument for a downward variance. Because the fact of the matter is if Shields had committed his prior offense in the state of West Virginia and been convicted under West Virginia's statute, Campbell would have applied, his base offense level would have been 14 and his guidelines would have been different. If the government wanted to make an argument that that shouldn't matter or that we should vary upwards in cases where Campbell did apply, they could have done that. They didn't. If Judge Goodwin wants to make that finding that this argument is not going to carry the day, he could have done that. He didn't. He may do that on remand. But the fact that that's a plausible or potential outcome of this case does not negate the fact that this was a non-frivolous argument and that he didn't fail to address it. Counsel, what if I think that the argument was not frivolous but it was relatively weak? That what the district court was really worried about and troubled by was your client's criminal history. And that, you know, relatively speaking, it was most unlikely that this non-frivolous argument was really going to move the needle. Is that a harmless error? It is not a harmless error, Your Honor. And I would push back on the thought that this is a relatively weak argument. Just assume for a minute that I think it is. Okay. It's still not a harmless error because you can't assume that Judge Goodwin would have done the same thing had he considered this argument. How do I square that? Let me just say that I'm sympathetic to the I don't really understand how this kind of error can be harmless, but yet this court has said it can be. So explain to me, like, I guess what I need, for you to explain to me why this isn't harmless, I need you to, like, explain to me what would, in your view, what is harmless? Because we have said there can be harmless error. There can. And I read those cases. And the cases are kind of all over the map in this area. I don't disagree. To me, in some ways, frivolous and harmless error are subsumed. And in this case... All right. That seems like it would be a very logical way to think about the world, that there is sort of a materiality requirement built into the rule. And so, of course, it can never be harmless. But, again, we've said it can be harmless. And I am really struggling with trying to figure out how that operates. I'm trying to think back as to the cases in which harmless error was found. I think there were significant aggravating factors in those cases that the district court did discuss thoroughly and did rely on. But that's this case. The district court discussed pretty thoroughly its concern about your client's criminal history. But at the end of the day, the district court tied the sentence to the bottom of the guidelines. He said, I wouldn't be giving you a bottom of guidelines sentence if... And to me, that indicates that Judge Gordon felt some sort of tie to what the guideline range was, such that if Shields would have had a lower guideline range, he very well may have... I agree with that. But I think we're talking about harmless error at two different stages. I think what we have suggested in our cases is that there can be cases where it's not that... If the district court had been moved by this kind of Campbell argument and the guidelines range and had granted a downward variance, I think our case law would say, well, then that's not a harmless error because he was tying this to the guideline range. But I think the argument for why it is harmless is that we can tell, based on what he said and his profound concern about criminal history, that this argument was not going to persuade him to grant a downward variance. I think under this Court's jurisprudence on this particular topic, that's reading too much into what Judge Grubin said. And maybe he did consider that. Maybe he would give the same sentence on remand. But you can't tell that from the sentencing transcript. Can I ask you just... I will let this go a little bit. It seems to me that in thinking about harmless error and how it would apply in this context, it would be helpful to know what is the point of the rule in the first place. Why do we require district courts to address non-frivolous arguments for lower sentences? And it could be just to make sure that the court has actually considered the argument. And so if the context makes clear it's been considered, we could say that's harmless error. But it could have to do with the explanation itself, either because the defendant is titled to an explanation or the explanation is helpful for us on appellate review, or because we think that maybe the fact of articulating your explanation might make you reconsider. Do you have a view on what is the point of this rule in the first place? I think you articulated it well, Your Honor. Which one of those? Well, I mean, I think it serves multiple purposes. This all flows from Gall. And it helps with appellate review. It gives you guys a basis to understand what the district court was thinking with an imposed sentence. And I think you raise a very good point that it tells the defendant what the court was thinking. I listened to an argument from earlier this week on this exact same topic involving another panel, and defense counsel there made a very... Was it this exact same argument, like intervening change of the gut? Well, not intervening change of the gut. Failure to explain. Failure to explain. And defense counsel said, if I have to turn to my client and he says, why did the judge sentence me there and I have to be the one to explain it, there's been a failure. So then let me ask you a hypo that has occurred to me that sort of gets at what Judge Harris is saying. Say they have a... Say this is an actively engaged judge at sentencing and they have backs and forth and the defense makes proffers and the government makes proffers and the court's asking questions. It's very clear the court's sort of engaged with the process. And at the end of the hearing, the court says, look, Mr. Page, I've listened to everything you've said. I've listened to everything your client said. I understand your arguments. But at the end of the day, I just can't get past X, Y, and Z. And so the sentence is 80 months. Is that enough in your view? That's a better case. We don't have that here. Sure. I totally understand you don't have that here. So in other words, in pronouncing sentence, I don't expressly address your argument, but I say the reason I'm rejecting all of your arguments is X, Y, and Z. That very well may be... Or I think all your arguments are outweighed by X, Y, and Z. That gives context. That gives context to maybe suggest that that argument was considered. Again, we don't have that here. Judge Goodwin never mentioned unwarranted sentencing disparities. Judge Goodwin never said I read everything. He was very focused on the guideline issue. And once that was resolved, he spread on the record the guideline calculation and proceeded to pronounce sentence. We made the variance argument. That was the thrust of our sentencing argument. We made it in our objections to the pre-sentence report or the response to the government's objection. We made it in our sentencing memorandum and again at sentencing. And for him to not address that at all indicates to me that it wasn't on his mind. There are other judges... Counsel. That was loud.  I'm a little nervous. I'm not going to speak now. I wanted to say that he was aware of our decision in Campbell. Was he not? He was, and he discussed that thoroughly. But he discussed it in the context of resolving the guideline objection without mentioning its disparate impact on defendants who had prior drug trafficking convictions from other jurisdictions. Some of the judges in our district will ask defense counsel at the conclusion of a sentencing hearing, have I addressed all of your arguments for a variant sentence? I think that's a good practice because I think an answer, yes, Your Honor, you have, would waive any appellate issue we might have on this theory. But again, Judge Goodwin didn't do that. So at the end of the day, it's clear that he didn't address it. And how much explanation, I realize we may not need to get there, but how much explanation do you think you would need? Could the judge have just said, yeah, what you're raising is just kind of what the guidelines do. So, no. You're, like, you're objecting to the existence of the guidelines and the existence of the categorical approach. If he would give me a chance to push back on that position, I think that would be... But then he says, I'm just not persuaded, because I think what you're fundamentally doing is taking issue with the very way the categorical approach is. Then at the end of the day, if that, that would give context that he had considered it, and I don't think we would be here. Again, here, he never mentioned it. There's no dispute as to that. You can't glean from the context of this that he considered it. That results in procedural unreasonableness, and that requires vacation and remand. Can I just... I'm sorry. I know you're out of time, and I will try to be quick. You've just said considered a couple of times. So is that what we're looking for? So if we think the judge considered the argument, is there a violation if he does not explain why he rejected the argument? If we can be confident. I mean, he says, I considered your arguments. I'm trying to remember what the quote from the case law requires. I think considered and addressed are kind of used interchangeably. They are used, yes, but that seems problematic, because they're different things. If he considered it and found it to be, and from the context of the proceeding, found it to be unavailing, then I think that's sufficient. Again, that's not what we have here. So are there no further questions? Thank you.  Good morning, Your Honors. May it please the Court. My name is J.C. McCallum. I'm an assistant United States attorney with the Southern District of West Virginia. Here the district court did not commit procedural error as it made sufficient findings related to the sentence imposed when it accurately calculated the sentencing guidelines. Is that it? So as long as the guidelines are accurately calculated, there can be no procedural error through failure to explain? No, Your Honor. I would not say that's it, but I would say that in this case, the heart of the issue, the heart of the defendant's request for a downward variance was criminal history. That is the basis of their request for the variance. Criminal history was considered, again, when the court carefully calculated the guidelines and addressed criminal history as a whole, didn't look at the single conviction of the defendant. As the defendant has conceded in their reply brief, the operation of the guidelines themselves address disparate treatments of defendants. So that is? No, no. The defendant is saying, I think, the operation of the guidelines themselves, this is the rare case where it's the guidelines operate to cause the disparity. So I don't see how saying, well, he properly calculated the guidelines, doesn't address the argument, it creates the argument. The guidelines did not create a disparity for this defendant. And the guidelines are not created to address disparities between defendants from state to state. Yeah, but his, I just don't understand how calculating the guidelines is sufficient to address an argument if the argument is, in my case, the guidelines operate to create this weird disparity. Because you have Campbell for West Virginia, and people who are sentenced with a West Virginia conviction are getting a different result than I am. How does saying, well, I calculated the guidelines, address that? And, Your Honor, I would push back and say that the guidelines themselves are in place to address unwarranted disparities. Right, that's an argument why the district court could and perhaps should reject his argument, not that the district court did address his argument. And, Your Honor, again, I would say that his argument at the heart of that is criminal history. So we can't take out criminal history, which we know the district court very thoroughly addressed, and say that his request for a downward variance was not addressed. That doesn't make any sense. Criminal history for some defendants is a sprawling category. You could say, I have a problem with point A on criminal history, and just because the district court addressed criminal history generally or addressed D, E, and F parts of criminal history doesn't mean they've addressed my argument about A. I mean, I just... Am I right about that? It can't just be that simply because the district court said some things about criminal history and just because the defendant's argument is in some ways about criminal history, that means it's necessarily sufficient. That seems way over the top. If anything, doesn't it make it worse? If you have an argument, say your argument is my criminal history overrepresents the culpability of what I did and the violence of what I did. If the district court then says, well, based on your criminal history, I'm giving you this sentence and never addresses your argument, that makes it worse. In that scenario, yes, Your Honor, the court should address that. But, again, that's not the case here because the guidelines as applied worked correctly for Mr. Shields. He, again, he creates a hypothetical defendant. If someone in West Virginia committed a controlled substance offense, which he did not, that was not his underlying conviction, if that person was sentenced as he were, they would have a lower base offense level. Right. They would have engaged in the exact same conduct, exact same culpability, but one of them is going to get a lower sentence now because of this weird Campbell quirk. Because of the weird Campbell quirk, yes. But, again, that did not apply to this defendant. And, again, the guidelines are not there to address hypothetical defendants or state-to-state variances. This is a nationwide thing that the guidelines are set to make sure that there aren't disparities. So just doctrinally, you are saying this was a frivolous argument and the judge didn't have to address it. I believe the judge made sufficient findings, but if the court believes it did not, the argument itself is frivolous. I would say that it's not just a relatively weak argument. I would say it's frivolous because this argument can't prevail. Again, Campbell didn't apply to Shields. The guidelines, again, are not made to address individual or defendant-to-defendant differences in sentencing. So making that argument... Wait, wait, wait. Wasn't literally one of the points of the sentencing guidelines to address defendant-to-defendant disparities? Like, wasn't that literally one of the main points of the sentencing guidelines? Generally, but not a hypothetical defendant in a different state which happens to be in a different circuit. Well, why does it have to be a hypothetical defendant? I mean, I presume with a little bit of effort we could find an actual defendant, someone who was actually convicted of one of these other crimes in a different state. Maybe Mr. Campbell. I mean, you're not saying that the problem, the only reason his argument fails is that he didn't, you know, find an actual person for whom this was true? No, Your Honor. I'm not.  I'm saying his argument fails because the operation of the guidelines don't address what they want. So, I mean, I guess I do, I guess I'm coming back to where Judge Hytens is. Everything you are saying sounds to me like a thing the district court could have said to explain why he was not going to grant a downward variance based on this argument. But I do have a real concern. As I read the transcript, it does sort of look to me like the district court not only didn't address the sort of separate equitable argument arising out of Campbell, but also didn't consider it and maybe didn't know that he was supposed to because it was not that long before this sentencing that we first decided in Torres Reyes, made very clear in a case like this, you've got a legal argument about why the guidelines should be lower and then an equitable argument about, even if you're wrong about the legal argument, the judge to take that into consideration. And that was the first time we ever said, look, you've got to address both of those. Those are two distinct arguments. And I'm just not confident in reading this transcript that the district court addressed the equitable version of the argument. I mean, I know he didn't address it, that he considered it. I don't have confidence that it was even considered. I would say it was considered. And what makes you think that? Again, at the heart of the downward variance argument was criminal history. I don't think anyone would disagree. So you think when he said criminal history, he meant that's your equitable argument about Campbell? Correct, because what we're looking at, they're saying, hey, criminal history in West Virginia. Again, this is criminal history in Ohio. These two, that is the heart of it. And I believe if you look at it that way, then he certainly addressed it. The criminal history was the crux of the decision, the reason why he gave an in-guideline sentence. What is your best authority, like case or whatever, for the proposition that this argument is frivolous? A case of this court, a case of the Supreme Court, a case of any Article III court? I would say, again, the argument is frivolous. I don't have a specific case to give to you, Your Honor. Okay, and how do I square the argument that it's frivolous, I was looking this up, with 3553A6, which says the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. Why isn't his argument quite comfortably within 3553A6? It doesn't say similar conduct in West Virginia or similar conduct within the state. It says defendants with similar records and similar conduct. Correct, and there's a reason it's not similar conduct in West Virginia. This is, again, to look at similar conduct nationwide. That is the purpose of the guidelines. And his argument was, if you look at defendants who committed similar conduct in other states, they would get lower guidelines ranges than me. And, Your Honor, if I could quote this court in, I believe, Swerow, as I did in my brief. This court said, District Court is not required at sentencing to examine the records of various other people. Swerow identified who had been convicted of similar or more serious crimes. The requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons. That was a different context. What's distinct about the argument being made here is that here the argument is the guidelines cause the disparity. In Swerow it was different. It was just like we've done similar things and the guidelines don't sort of capture those differences. But here it is actually the operation of the guidelines and the categorical approach that is causing the problem. So I just keep coming back to, I don't think we can point to, well, the guidelines take care of the disparities themselves in this case. And, Your Honor, I would argue that there was no disparity. I understand what they argued. But if you take an identical defendant to Shields, someone who had an underlying State of Ohio drug conviction, he was sentenced and the guidelines were exactly like that defendant would be. So your whole argument hinges on sort of who we pick as our point of comparison because his argument is no. I want a defendant who did the exact same thing as me, sold drugs in the exact same way, but because he happened to be sentenced in West Virginia and not Ohio, he is now getting a dramatically lower Federal sentence on the crime he committed. I'm saying that that's what goes to making the argument frivolous. I'm not suggesting that's the analysis that we should take, but it goes to why I believe it's frivolous. Even if this Court believes that there was procedural error, I would submit that that error was harmless. It is patently clear from the transcript, patently clear from the colloquy with the Court. If this is sent down for resentencing, there will not be a different sentence. To Judge Hyten's point, Mr. Shields would have to make an entirely different argument than the one he made at the original sentence. I don't think anything would lend itself to there not being a different outcome than that. So can I ask you that? So that's an argument that it was harmful at the time but has become harmless because of intervening events meaning that any resentencing would be governed by a different regime. I have never encountered a case that raises that question, nor have I been able to find a case that addresses that question of like at what point is harmlessness assessed? Like is it assessed at the time? Have you found any case that bears on the do we consider whether it was harmless at the time or are we allowed to consider whether it would be harmless today if the same thing happened? I will say I have not been able to find a case. I'm asking if you've been able to find a case. Not aware of a case, Your Honor, no, but I think it does go to the analysis of if it is sent down to the District Court for resentencing, there's an entirely different argument that needs to be made. Again, we don't have to speculate as to would, again, in the event that you believe there was procedural error, if the court would have, and I believe the court did consider the issue, but had it been more thoroughly considered, would there be a different sentence? And I would submit the answer is no. And again, that is clear based on Judge Goodwin's sentencing where he says I, he all but says I would sentence you higher but for the fact that you are serving a 29 to 34 and a half year sentence in Ohio that this is going to run consecutive to. So he's suggesting because of your abhorrent criminal history, I would have gone higher but you're already receiving a decades-long sentence in Ohio. So let me ask you another question that seems to bear on the harmlessness question. Do you think that if the District Court had accepted this argument and given him a lower sentence based on this argument, that his sentence would have been substantively unreasonable? Hypothetically, so the District Court addresses the argument, the District Court says, you know, actually, that's kind of an interesting point and that is kind of troubling, so I'm going to lower the sentence I would have otherwise given by a month or two months or three months. Do you think it would have been substantively unreasonable for the District Court to have done that? No, Your Honor, but nothing based on the transcript would indicate that's what the District Court would do. No, it's a hypo. But I mean, one of the ways to discover if not addressing the argument is harmless would be that if the District Court had addressed the argument, it would have been a legal error to have accepted it. It would be a pretty good argument that something's harmless. I don't believe it would be a legal error to accept it. I just believe that it was addressed. So from the way you're talking about harmlessness, it sounds like, and some of our cases talk about it this way, the question is, would the sentence be different? But we also say in cases like Ross that part of the point of this explanation requirement is that the defendant is entitled to hear from the judge why the argument hasn't been accepted. And so if that's part of the purpose, does it follow that, well, the sentence might be the same on remand, but at least this time the defendant will get what he's entitled to, which is an explanation from the judge as to why the argument was found lacking? And that is important, Your Honor, and I believe this is very distinguishable from Ross. In Ross we had a downward variance request based on a mental health issue, and that is a very individual characteristic of that defendant that would require treatment from the district court. Here what we have is a general criminal history characteristic that, again, was very thoroughly addressed by the district court. That seems like you're just saying there was no error. If you could assume for a minute that there was an error. Even if I thought, I'm pretty sure the district court is not going to change the sentence on remand, I might still, what do I do with this other purpose of the requirement, which is, well, he might not change it, but you will at least get the part of the rule that is about having the judge himself explain to the defendant why the argument was not compelling. And, Your Honor, if I may address your question, I understand I'm out of time. I would say that, again, that rule is important. The individual characteristics should be addressed by the court, but I would submit that in this case what they're arguing is not an individual characteristic. It is a more general criminal history to hypothetical defendants so it did not require explicit treatment by the district court. Judge Berner, do you have questions? Yes, I have a question taking you back to the amendment to the sentencing guidelines. Your colleague suggested that Judge Goodwin, if the case were remanded, would not be able to consider the amendment. I'm wondering if you have a view on that question. I think he could consider it, Your Honor, insofar as it indicates policy reasons as to why the amendment took place, but as has been thoroughly discussed, the amendment would not apply to him because he was a base offense level 20 all along, so the amendment didn't affect him. It wouldn't be an ex post facto issue because it didn't change anything. Obviously, he's not entitled to a lesser treatment because, again, it never applied. So it could be considered to examine policy considerations, which I think would just further support the sentence that was given by the district court. But it wouldn't apply to him? Correct. It would not apply to Mr. Shields. Thank you. Thank you very much. We appreciate it. Some rebuttal time? Thank you. Judge Huygens, I first want to address, come back to your discussion about this is kind of what the guidelines do and these kind of disparities are what we should leave within the guideline system. The guidelines are but one of several factors that district courts are required to consider when doing an individualized sentencing. And I would push back on that by saying avoiding unwarranted sentencing disparities is another one of those factors. And when the guidelines operate to create an unwarranted sentencing disparity, 3553A6 should operate to cabin that, the operation of the guidelines. And that's what we're asking to happen here. I just feel like, right, maybe before Booker that would have been an argument. Like you can't depart from mandatory guidelines based on a fundamental disagreement with how the guidelines work. But we're in a post-Kimbrough world now. We can do all kinds of stuff. We are. And I think if I were ever to be a district judge and was confronted with a closed call on a guideline issue, I would try to go to what are the facts and the law that supports all that. Here's what actually happened. And if I'm going to parse that out one way and the guidelines are base offense level 20, I parse it out the other way, base offense level 14, I would impose a sentence almost without regard for either way. And that's not what Judge Goodwin did here. The fact of the matter is for several years post-Campbell in West Virginia, and the same thing happened across the country. This issue was percolating in other circuits before it made its way here. But for several years in the Southern District of West Virginia, folks who pled guilty to being a felon in possession of a firearm with a prior felony drug conviction in West Virginia or any one of the similar states were sentenced under a lower guideline range than what Shields was. To me, that is an unwarranted sentencing disparity. And nothing from the sentencing hearing made it patently obvious that Judge Goodwin would have imposed the same sentence notwithstanding our argument for a disparity. And Judge Harris, to my understanding, that's what it comes back to for harmless error. It was patently obvious from the transcript that the sentence would have been the same. Nothing in the transcript, in my view, indicates that it would have been the same. Yes, there are some aggravating circumstances with regard to Shields' criminal history, but Judge Goodwin doesn't say he would have imposed the same sentence regardless. As I mentioned previously, it was a bottom of guideline sentence indicating to me that he felt constrained to some extent by what that guideline range was. If this goes back for resentencing, I want to make the record clear from our perspective, there is no ex post facto issue because the guidelines would be the same for Mr. Shields, regardless of which guideline manual was used. I think there's some fundamental unfairness to send it back and say— Okay, so if we're literally talking about the question of if I'm the district court judge and I'm resentencing and I have my books on the bench, which book do I pick up in this hypothetical world where you're reusing the actual guidelines manual? It would be the current guidelines manual. The current one as of resentencing. As of resentencing, yes, Your Honor. But that does not eliminate our non-frivolous argument for a variance based on the sentencing landscape at the time Shields was originally resentenced, and I would argue that it is fundamentally unfair to change that. So for those reasons, we would ask the court to vacate and remand for resentencing. Thank you very much. All right. We will come down and greet counsel and then move on to our next case.
judges: Pamela A. Harris, Toby J. Heytens, Nicole G. Berner